BOARD OF EDUCATION OF DUPLIN COUNTY v. STATE BOARD OF EDUCATION.

*State Board of Education, powers of—Apportionment of School Funds— Writ of Mandamus.*

It is the province of the General Assembly, and not of the State Board of Education, to establish a uniform system of public schools (Const., Art. 9, sec. 2), and while it is the duty of the Board, under Sec. 10 of Article 9 of the Constitution, to make needful rules and regulations concerning the educational fund, it has no power and cannot be compelled by *mandamus* to apportion money raised by taxation in the different counties for school purposes and held in the treasuries of such counties for expenditure according to the apportionment made by the General Assembly.

APPLICATION for a *mandamus*, heard before *Brown, J.*, at Chambers in Clinton, DUPLIN county, at February Term, 1894.

The complaint was as follows:

" 1.  That the plaintiffs, the Board of Education, and the Board of Commissioners are duly organized bodies of Duplin county, with power to sue and be sued, and Richard W. Millard is the Superintendent of Public Instruction of said county, and James G. Kenan is *ex officio* Treasurer of said county, and that each of the plaintiffs are now in the exercise of their several official duties, and that the defendant, the State Board of Education, is a body politic and corporate

under the law of the State, and may sue and be sued by that name; that the defendant Robert M. Furman is Auditor of the State of North Carolina, and the defendant John C. Scarborough is Superintendent of Public Instruction of the State of North Carolina, and that each of the defendants are now exercising the duties of their several offices.

" 2. That the defendants, by their rules, regulations and directions, touching the public school system of the State, do now, and have so done for several years, apportion, appropriate and distribute among the several counties of the State the public school fund of the State and counties in a manner and upon a principle contrary to the provisions, intent, and meaning of the Constitution of the State.

" 3. That the defendants, by their said rules and regulations, do allow, permit and authorize each county in the State to retain and apply all the public school moneys raised and collected in such county, supplemented by such public school moneys as it derives or receives from the State and other sources, to the use and exclusive benefit of the public schools in such county without regard to the number of school children in such county between the ages of six and twenty-one years in its relation to the other counties and the whole number of such children in the State; whereas the defendants ought to apportion and apply the public school fund of the State and counties among the several counties in proportion to the number of such school children in each county, based upon a *per capita* division and distribution of the public school fund of the State and counties among all the children of the State between the ages of six and twenty-one years.

" 4. That the whole number of said school children in the State on June 30, 1892, last report, within the prescribed age was 598,256, and the whole amount of the public school fund received by the County Treasurers for the year ending

June 30, 1892, was $775,449.63, making the *per capita* share of each school child within the prescribed age in the State in said fund equal to one dollar twenty-nine and a half cents and a fraction, and the average length of school terms in the State for the year 1892 was $12\frac{40}{100}$ weeks.

"5. The whole number of school children in Duplin county within the prescribed age on June 30, 1892, last report, was 7,207, and the whole amount of public school fund received by the Treasurer of said county for the year ending June 30, 1892, was $6,373.08, making the *per capita* share of said school children in said county equal to $88\frac{42}{100}$ cents and a fraction, and the average length of the school terms in said county for the year 1892 was seven and one-fourth weeks.

"6. That the whole number of school children in New Hanover county within the prescribed age on June 30, 1892, last report, was 7,867, and the whole amount of public school fund received by the Treasurer of said county for the year ending June 30, 1892, was $27,105.13, making the *per capita* share of said school children in said county equal to three dollars forty-four and a half cents and a fraction.

"7. That the plaintiffs have demanded of the defendants that they apportion and divide the public school fund equally among all the school children of the State within the prescribed age, and that they apportion and appropriate and apply to Duplin county and to each county its share of said school fund in proportion to the number of school children in such county between six and twenty-one years of age, and the defendants refused so to do.

"8. That the defendants seek to justify their refusal in obedience to an act of the Legislature (*The Code*, ch. 15, and amendments thereto), which acts, the plaintiffs allege, so far as they bear upon the contention in this action, are unconstitutional and void."

Wherefore the plaintiffs pray judgment:

"1. That the defendants show cause at the time and place designated in the summons why a peremptory order shall not be made by the Court directing that they apportion and divide the public school fund of the State *per capita* among all the school children of the State between the ages of six and twenty-one years, and that they apportion, appropriate and apply to Duplin county and to each county in the State its share of said fund in proportion to the number of said school children in such counties within the prescribed age.

"2. That such peremptory order be made.

"3. That chapter 15, Vol. II of *The Code*, and amendments thereto, authorizing a division or appropriation of the public school fund otherwise than upon a *per capita* basis among all the said school children of the State, be declared void.

"4. That such orders and decrees as may be deemed necessary and proper be made, and that plaintiffs recover their costs in this action."

The answer was as follows:

"1. That the first paragraph of the complaint is admitted.

"2. That the second paragraph of the complaint is denied.

"3. That the third paragraph of the complaint is denied. It is admitted that the tax levied by the General Assembly for the support of the public schools of the State is collected in the several counties of the State and apportioned and used in the counties in which the same is paid, but it is denied that this is done under the authority of the defendants or either of them, or under any rule, regulation or ruling of the defendants. On the contrary, the defendants allege that said tax for public schools is so collected and apportioned under an act of the General Assembly, and that neither of the defendants has the control, custody or management of said taxes.

"4. That the fourth, fifth and sixth paragraphs of the complaint are admitted.

"5. That the seventh paragraph of the complaint is denied, and the defendants allege in connection therewith that no part of said school fund is in the possession or control of either of the defendants.

"6. That the eighth paragraph of the complaint is denied. The defendants do not act in the premises because they have no fund under their control to apportion, and the General Assembly has given them no authority to interfere with the collection, disposition and apportionment of the school fund collected and disbursed in the several counties."

It was admitted, for the purposes of the trial, that the demand and refusal had been made as alleged in the complaint. After hearing argument the Court, being of opinion against the plaintiff, refused the writ prayed for, and adjudged that the defendants go without day and recover costs, and plaintiff appealed.

*Mr. W. T. Faircloth,* for plaintiff (appellant).
*Messrs. Allen & Dortch* and *Busbee & Busbee,* for defendant.

MACRAE, J.: The State Board of Education by virtue of section 10, Article 9 of the Constitution, "shall succeed to all the powers and trusts of the president and directors of the literary fund of North Carolina, and shall have full power to legislate and make all needful rules and regulations in relation to free public schools and the educational fund of the State; but all acts, rules and regulations of said Board may be altered, amended or repealed by the General Assembly, and when so altered, amended or repealed they shall not be re-enacted by the Board." The powers and duties of the president and directors of the literary fund are fully set forth in chapter 66 of the Revised Code

of 1854. The "literary fund" embraced the swamp lands of the State and a large amount of shares of bank stock, stock in railroad companies, dividends accruing upon certain navigation and canal company stock, the proceeds of certain taxes upon licenses, moneys paid for entries of vacant lands, certain bonds due and owing by railroad companies, individuals, corporations and the State. These or the income thereof were vested in the president and directors of the literary fund, to which corporation large powers were granted for its administration, and its net income was required to be annually distributed among the several counties of the State in the ratio of their Federal population, and paid over to the chairmen of the County Boards of Education. This large and extremely valuable fund, set apart many years ago for the education of the youth of the State, has no longer an existence, except as to that portion of the swamp lands which has not been disposed of, and about $150,000 of State bonds bearing four per. cent. interest, and $27,000 otherwise invested. It will readily be seen that the income arising from this permanent fund, even if there were no expenses of the educational department to be paid out of it, would go a very little way toward the keeping up of the public schools. The sum necessary for this purpose has now to be raised annually by taxation upon polls and property, and from fines and forfeitures and other resources named in section 5 of Article 9 of the Constitution, comprising the county school funds.

There was no provision of law for the apportionment by the president and directors of the literary fund of any except the net annual income of the literary fund as stated above. The Courts of Pleas and Quarter Sessions were required by law to levy an annual tax for school purposes, which was collected in each county and paid over to the chairman of the County Superintendents. By the present

system, ch. 15, Vol. II of *The Code*, as amended from time to time, the State Board of Education, succeeding to the powers of the president and directors of the literary fund, are not to make investments of the funds coming into their hands, but are required on the first Monday in August of every year to apportion, on the basis of school population, among the several counties of the State all the school funds which may then be in their treasury. *The Code*, §2535.

The plaintiff's complaint is to the effect that the State Board of Education, by their rules and regulations, do allow, permit and authorize each county to retain all the public school money raised within that county, and apply it, with such funds as are received from the State and other sources, exclusively to the support of the schools in said county; and it is alleged that this is at variance with the constitutional requirement that there shall be provided by the General Assembly " a general and uniform system of public schools in the State." The plaintiff seeks to require the State Board of Education to apportion and divide the public school fund of the State *per capita* among all the school children of the State, especially those of Duplin county. The defendant denies that it has any of the school funds in its treasury, or that it is its duty to make the apportionment of the school fund, and it avers that the General Assembly has by appropriate legislation provided the necessary means to be raised by taxation in the several counties and there apportioned and used.          •

It was stated by the learned counsel for the plaintiff upon the argument that the main question intended to be presented is whether the school children are entitled to an equal distribution *per capita* of the school fund; an interpretation of the 9th Article of the Constitution that all of the fund raised in the State for common school purposes should be distributed *per capita* among the beneficiaries

and not be retained in the counties where it is raised, and there expended. And in order to raise this question the plaintiff demands that a *mandamus* issue to the State Board of Education requiring it to make an apportionment and division of all the educational funds under its control, *per capita*, among the school children of the State, and apportion to each county its share of said fund in proportion to the said number of school children.

We see nothing in the Constitution which imposes upon the defendant the duty of apportioning the money raised by taxation for the support of the public schools; it is the General Assembly and not the State Board of Education which is required to establish a uniform system of public schools. Art. 9, sec. 2. The funds coming into the treasury of the State Board of Education, and which it is required to apportion, are a very small portion of the money to be expended for the support of the schools. The needful rules and regulations which it may make concerning the educational fund do not extend to the apportionment of that which has already been apportioned by act of Assembly.

The writ of *mandamus*, once called a high prerogative writ, will never be issued except where its propriety is plain and beyond doubt. If there were funds in the treasury of defendant which it ought to apportion among the counties according to law, and which it refused so to appropriate, the remedy here invoked would be the proper one; but in the absence of any allegation to that effect, and in the absence of any provision in the Constitution or in the statutes requiring the defendant to make the apportionment of the money raised by taxes in the different counties and retained in their several treasuries, the defendant cannot be compelled to do that which is not required of it by law.

We do not feel at liberty to consider any abstract question involving the construction of the Constitution not necessary to be decided in the disposition of the matter before us.                                    Judgment Affirmed.